

DEC 14 2016 TM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
    ) No. **16CR**    **812**
v.    )
    ) Violations: Title 18, United States
BRIAN BRUNDAGE    ) Code, Sections 1341 and 1343, and
    ) Title 26 United States Code, Section
    ) 7201

JUDGE NORGLE

MAGISTRATE JUDGE COX

**COUNT ONE**

The SPECIAL FEBRUARY 2016 GRAND JURY charges:

1.    At times material to this indictment:

    (a)    Electronic Waste ("e-waste") was electronic equipment deemed to have reached the end of its useful life and discarded by its owner.

    (b)    Intercon Solutions, Inc. ("Intercon"), was an e-waste recycling business located in Chicago Heights, Illinois. Intercon had several customers, including private businesses and governmental entities, who paid Intercon to disassemble, recycle, and/or destroy their e-waste and certain other materials.

    (c)    EnviroGreen Processing, LLC. ("EnviroGreen), was an e-waste recycling business located, at times, in Gary, Indiana. EnviroGreen had several customers, including private business, who paid EnviroGreen to disassemble, recycle, and/or destroy their e-waste and certain other materials.

    (d)    Defendant BRIAN BRUNDAGE was the president, chief executive officer, and fifty percent owner of Intercon. BRUNDAGE's responsibilities

at Intercon included managing and supervising Intercon personnel, company finances, customer relations, business solicitation, and day-to-day business operations.

(e)     BRUNDAGE was also the Chief Executive Officer and owner of EnviroGreen.  BRUNDAGE's responsibilities at EnviroGreen included company management, company finances, customer relations, business solicitation, and day-to-day business operations.

(f)     Intercon employed a sales staff that was responsible for advertising Intercon's recycling services and recruiting customers to send Intercon their discarded electronics and other materials for disassembly, recycling, and/or destruction.

(g)     Intercon employed a warehouse staff that was responsible for processing all incoming and outgoing e-waste materials at Intercon's warehouse in Chicago Heights.

(h)     Intercon employed a front office and accounting staff that was responsible for Intercon's financial and business book keeping.

(i)     Universal Waste was a category of materials designated as "hazardous waste" under federal law and subject to special restrictions related to storage, treatment, disposal, and transportation.

(j)     Cathode Ray Tubes (CRTs) were the glass video display component of certain electronic devices, including certain computer and television monitors, that contained potentially hazardous amounts of lead.  If determined to be

2

"hazardous waste" under federal law, CRTs and CRT glass were subject to special restrictions under federal law regarding their export, long-term storage, handling, and disposal.

(k)     Several private certification standards existed in the e-waste recycling industry that served to regulate the practices of e-waste recycling businesses. Among other things, the certification standards helped to ensure that e-waste recycling companies were compliant with federal, state, and local environmental laws regarding the receipt, storage, transportation, handling, and disposal of hazardous and potentially hazardous materials, including Universal Waste and CRTs. The industry certification standards further ensured that certified e-waste recycling businesses were not engaged in the unauthorized remarketing, exportation, or landfilling of e-waste materials. Prominent e-waste industry certification standards included the Responsible Recycling ("R2") certification, the "E-Steward" certification, as well as certain International Organization for Standardization (ISO) certifications related to the recycling, refurbishing, or destruction of e-waste and certain other materials.

(l)     Customers of e-waste recycling businesses relied on these and other e-waste industry certifications as indicators that certified e-waste companies were in compliance with federal and state environmental laws, as well as privately administered e-waste recycling industry standards designed to protect the environment, public health and safety, and prevent the unauthorized remarketing of e-waste and other materials.

2.      Beginning no later than 2005 and continuing until at least in or about September 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, and others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud Intercon and EnviroGreen's customers, and to obtain money and property from Intercon and EnviroGreen's customers, by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.      It was part of the scheme that BRUNDAGE falsely represented, and caused others to falsely represent, that Intercon disassembled all e-waste and other materials that it received to their component parts, and then recycled, destroyed, or sold the component materials.  BRUNDAGE further falsely represented, and caused other Intercon employees to falsely represent, that Intercon engaged in "absolutely no reselling, no remarketing, no landfilling, no incineration, and no exportation" of the e-waste and other materials that it received from its customers.

4.      It was further part of the scheme that BRUNDAGE falsely represented, and caused others to falsely represent, that EnviroGreen was a recycling company that disassembled e-waste and other materials to their component parts, and then recycled, destroyed, or sold the component materials.

5.      It was further part of the scheme that BRUNDAGE made these and other similar materially false representations, and caused others to make these and other similar materially false representations, through Intercon's website at

www.interconsolutions.com, EnviroGreen's website at www.envirogreenprocessing.com, various promotional materials, and through telephone calls, emails, faxes, and other means designed to generate business for Intercon and EnviroGreen.

6.     As a result of the representations described above, several private companies, including Companies A, B, C, D, E, F, as well as several governmental entities ("upstream customers"), were induced to enter into contracts or other business agreements with Intercon and EnviroGreen for the disassembly, recycling, and/or destruction of e-waste and other materials.  It was a material term of these contracts and agreements that Intercon and EnviroGreen disassemble all materials they received from upstream customers in an environmentally sound manner, and that they not landfill or export any of the materials, or resell the materials in whole (i.e. non-disassembled) form.

7.     It was further part of the scheme that, rather than disassemble, recycle, and/or destroy the materials that upstream customers sent to Intercon and Envirogreen, BRUNDAGE regularly resold and caused to be resold the materials in whole form to various customers ("downstream vendors").

8.     It was further part of the scheme that BRUNDAGE knowingly sold e-waste and other materials, including potentially hazardous CRT glass and batteries, to downstream vendors whom BRUNDAGE knew would ship the materials overseas, despite Intercon's representations that it engaged in "absolutely no exporting."

9.    It was further part of the scheme that, in March 2011, BRUNDAGE sold CRT monitor material, batteries, and other potentially hazardous materials to Individual A, knowing that Individual A would ship the materials overseas.  It was further part of the scheme that BRUNDAGE caused the materials sold to Individual A to be loaded into an overseas shipping container (the Subject Container) for shipment to Hong Kong.  On or about May 5, 2011, authorities with the Hong Kong Environmental Protection Department (HKEPD) opened and inspected the Subject Container and discovered the materials that BRUNDAGE had caused to be loaded inside.  Due to the potentially hazardous nature of the materials, the HKEPD sent the Subject Container back to the United States.  In or about August 2011, Intercon was publicly accused of knowing involvement in the shipment to Hong Kong of the Subject Container and the potentially hazardous materials contained inside.

10.    It was further part of the scheme that, after Intercon was publicly accused with regard to the Subject Container, BRUNDAGE began a fraudulent effort to falsely conceal and publicly deny Intercon's knowing involvement in the shipment of the Subject Container and the potentially hazardous materials contained inside. As part of the concealment effort, BRUNDAGE destroyed or caused the destruction of business records related to the shipment of the Subject Container, made efforts to conceal ongoing overseas shipments of large quantities of e-waste and other materials that BRUNDAGE sold to Individual A and others, and caused a false defamation lawsuit to be filed.

11. It was further part of the scheme that BRUNDAGE destroyed, and caused others to destroy, large quantities of e-waste, including thousands of CRT monitors, in environmentally unsafe ways, including by smashing CRT glass in outdoor areas, without taking measures to prevent the release of potentially hazardous material into the environment.

12. It was further part of the scheme that BRUNDAGE caused thousands of tons of e-waste and other material Intercon had been paid to recycle, including potentially hazardous CRT monitors and CRT glass, to be landfilled, and misrepresented to customers and others that the landfilled materials had been properly disassembled and/or recycled.

13. It was further part of the scheme that BRUNDAGE knowingly caused e-waste and other materials that he was unable to resell to be stockpiled indefinitely at Intercon's facility, including potentially hazardous waste, and misrepresented to customers that the stockpiled materials had been properly disassembled and/or recycled.

14. It was further part of the scheme that BRUNDAGE generated, or caused to be generated, false or misleading Intercon business records documenting the nature and quantity of incoming and outgoing materials at Intercon. This included the intentional mislabeling of outgoing hazardous or potentially hazardous materials on invoices, bills of lading, and itemized shipping reports.

15.     It was further part of the scheme that BRUNDAGE destroyed, or caused to be destroyed, Intercon business records in an effort to conceal his fraudulent scheme.

16.     It was further part of the scheme that, in an effort to fraudulently obtain various e-waste recycling industry certifications, BRUNDAGE presented, or caused to be presented, false information to third-party auditors responsible for assessing Intercon's compliance with certification standards, including false information regarding Intercon's storage, handling, and disposal of Universal Waste materials and CRT monitors, as well as the identity and recycling capacities of Intercon's downstream vendors.

17.     It was further part of the scheme that, in an effort to deceive Intercon's upstream customers, BRUNDAGE led, and directed certain Intercon employees to lead, sham customer tours of Intercon's Chicago Heights facility.  During these tours, BRUNDAGE directed Intercon's warehouse staff to set up a staged disassembly line to make it falsely appear as though Intercon regularly processed e-waste in a manner that was consistent with its public representations.

18.     It was further part of the scheme that BRUNDAGE issued and caused to be issued false and fraudulent "Certificates of Destruction" and "Certificates of Recycling" to Intercon's customers, which falsely certified to the customer that its materials had been properly recycled or destroyed, when, in fact, BRUNDAGE had resold, landfilled, or stockpiled, or was planning to resell, landfill, or stockpile the materials.

19.     It was further part of the scheme that, in or around September 2014, BRUNDAGE established EnviroGreen in Gary, Indiana, to continue the fraudulent scheme that he had carried out at Intercon.

20.     As part of the continued scheme at EnviroGreen, among other things, BRUNDAGE attempted to unlawfully resell goods he received from Company F, which Company F paid Brundage and EnviroGreen to disassemble and recycle or destroy.

21.     It was further part of the scheme that, as a result of the materially fraudulent misrepresentations made by, and caused to be made by, BRUNDAGE, Intercon and EnviroGreen obtained millions of dollars in money and property from their customers, including Companies A, B, C, D, E, and F, by means of false and fraudulent pretenses, representations, or promises.

22.     It was further part of the scheme the BRUNDAGE misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hid, the existence, purpose, and acts done in furtherance of the scheme.

23.     On or about April 8, 2013, at Chicago Heights, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, for purposes of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an electronic mail communication from

9

Intercon's email server in Ontario, Canada, to the Microsoft Cloud email server of a downstream vendor located in the United States;

In violation of Title 18, United States Code, Section 1343.

## **COUNT TWO**

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.     The allegations in paragraph numbers 1 through 22 of Count One of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.     On or about July 31, 2014, at Chicago Heights, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, for the purposes of executing the above-described scheme, knowingly caused to be deposited in the United States mail an envelope containing a check for $3,302.37 from Company A, which check represented payment by Company A to Intercon for recycling services;

In violation of Title 18, United States Code, Section 1341.

## COUNT THREE

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.    The allegations in paragraph numbers 1 through 22 of Count One of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.    On or about September 23, 2013, at Chicago Heights, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, for the purposes of executing the above-described scheme, knowingly caused to be deposited in the United States mail an envelope containing a check for $924.13 from Company B, which check represented payment by Company B to Intercon for recycling services;

In violation of Title 18, United States Code, Section 1341.

## COUNT FOUR

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.     The allegations in paragraph numbers 1 through 22 of Count One of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.     On or about September 19, 2014, at Chicago Heights, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, for the purposes of executing the above-described scheme, knowingly caused to be deposited in the United States mail an envelope containing a check for $69.50 from Company C, which check represented payment by Company C to Intercon for recycling services;

In violation of Title 18, United States Code, Section 1341.

## COUNT FIVE

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.     The allegations in paragraph numbers 1 through 22 of Count One of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.     On or about October 30, 2014, at Chicago Heights, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, for the purposes of executing the above-described scheme, knowingly caused to be deposited in the United States mail an envelope containing a check for $941.00 from Company D, which check represented payment by Company D to Intercon for recycling services;

In violation of Title 18, United States Code, Section 1341.

## COUNT SIX

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.      The allegations in paragraph numbers 1 through 22 of Count One of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.      On or about February 4, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, for purposes of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate electronic funds transfer of $11,396.02 from the Bank of America located in Henrico, Virginia, to the Private Bank located in Chicago, Illinois, which electronic funds transfer represented payment from Company E to Intercon for recycling services;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.     At times material to this indictment:

        (a)     Intercon Solutions, Inc. ("Intercon"), was an e-waste recycling business located in Chicago Heights, Illinois.

        (b)     Defendant BRIAN BRUNDAGE was the president, chief executive officer, and fifty percent owner of Intercon.

        (c)     Company A was a technology company based in Dallas, Texas.

        (d)     Company A paid Intercon to disassemble and recycle or destroy calculators designed and manufactured by Company A ("Company A calculators").

        (e)     Company 1 was a company that bought and sold used telecommunications and other electronics equipment.  Company 1 was based in Tampa, Florida.

        (f)     Individual B was the president and CEO of Company 1.

        (g)     BRUNDAGE and Individual B entered into an agreement whereby BRUNDAGE diverted Company A calculators that Company A paid Intercon to disassemble and/or recycle to Individual B in Tampa, Florida, for Individual B to sell through Company 1.  As part of the agreement, BRUNDAGE and Individual B split the proceeds of the Company A calculator sales, with approximately 80 percent of the proceeds going to BRUNDAGE, and 20 percent of the proceeds going to Individual B.

2.      From approximately January 1, 2009, and continuing through on or about January 9, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, did willfully attempt to evade and defeat the payment of substantial income tax due and owing by him to the United States of America for the calendar year 2009, and committed the following affirmative acts of evasion:

(a)      During calendar year 2009, BRUNDAGE sought and obtained approximately $140,526 from Individual B as proceeds from the sale of Company A calculators.

(b)      BRUNDAGE directed Individual B to remit a portion of BRUNDAGE's share of the proceeds from the sale of Company A calculators to third-party vendors to pay BRUNDAGE's personal expenses, including credit card bills, payments on a personal loan, as well as payments to other individuals and entities to whom/which he owed money.

(c)      During calendar year 2009, BRUNDAGE caused Intercon to pay various personal expenses, including approximately $31,175 in wages and reimbursements paid to BRUNDAGE's nanny, and caused these expenditures to be falsely identified as business expenses on the books and records of Intercon, and later caused these expenditures to be deducted as business expenses on Intercon's corporate tax return.

(d)     BRUNDAGE willfully concealed from his tax preparer income he earned and payments he received in 2009 from the sale of Company A calculators;

(e)     BRUNDAGE willfully concealed from his tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(f)     BRUNDAGE willfully concealed from Intercon's tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(g)     On or about March 31, 2010, BRUNDAGE caused to be prepared a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for calendar year 2009, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

(h)     On or about July 19, 2012, BRUNDAGE caused to be prepared a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2009, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

(i)     On or about January 9, 2015, BRUNDAGE caused to be prepared a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2009, which was submitted to the Internal Revenue Service, that

did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

In violation of Title 26, United States Code, Section 7201.

## COUNT EIGHT

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.     The allegations contained in paragraphs 1(a) through (g) of Count Seven of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.     From approximately January 1, 2010, and continuing through on or about January 9, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, did willfully attempt to evade and defeat the payment of substantial income tax due and owing by him to the United States of America for the calendar year 2010, and committed the following affirmative acts of evasion:

(a)     During calendar year 2010, BRUNDAGE sought and obtained at least approximately $240,316 from Individual B as proceeds from the sale of Company A calculators.

(b)     BRUNDAGE directed Individual B to remit a portion of BRUNDAGE's share of the proceeds from the sale of Company A calculators to third-party vendors to pay BRUNDAGE's personal expenses, including credit card bills, payments on a personal loan, as well as payments to other individuals and entities to whom/which he owed money.

(c)     During calendar year 2010, BRUNDAGE caused Intercon to pay various personal expenses, including approximately $33,225 in wages and reimbursements to BRUNDAGE's nanny, and approximately $29,170 in jewelry

purchases, and caused these expenditures to be falsely identified as business expenses on the books and records of Intercon, and later caused these expenditures to be deducted as business expenses on Intercon's corporate tax return.

(d)　　BRUNDAGE willfully concealed from his tax preparer income he earned and payments he received in 2010 from the sale of Company A calculators;

(e)　　BRUNDAGE willfully concealed from his tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(f)　　BRUNDAGE willfully concealed from Intercon's tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(g)　　On or about March 24, 2011, BRUNDAGE caused to be prepared a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for calendar year 2010, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

(h)　　On or about July 19, 2012, BRUNDAGE caused to be prepared a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2010, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

(i)     On or about January 9, 2015, BRUNDAGE caused to be prepared a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2010, which was submitted to the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

In violation of Title 26, United States Code, Section 7201.

## COUNT NINE

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.      The allegations contained in paragraphs 1(a) through (g) of Count Seven of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.      From approximately January 1, 2011, and continuing through on or about January 9, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, did willfully attempt to evade and defeat the payment of substantial income tax due and owing by him to the United States of America for the calendar year 2011, and committed the following affirmative acts of evasion:

(a)      During calendar year 2011, BRUNDAGE sought and obtained at least approximately $652,546 from Individual B as proceeds from the sale of Company A calculators.

(b)      BRUNDAGE directed Individual B to remit a portion of BRUNDAGE's share of the proceeds from the sale of Company A calculators to third-party vendors to pay BRUNDAGE's personal expenses, including credit card bills, payments on a personal loan, car payments to Lexus of Orland Park and Lexus Financial Services, as well as payments to other individuals and entities to whom/which he owed money.

(c)      During calendar year 2011, BRUNDAGE caused Intercon to pay various personal expenses, including approximately $36,142 in wages and

reimbursements to his nanny, and approximately $26,304 in wages and reimbursements to his housekeeper, and caused these expenditures to be falsely identified as business expenses on the books and records of Intercon, and later caused these expenditures to be deducted as business expenses on Intercon's corporate tax return.

 (d) BRUNDAGE willfully concealed from his tax preparer income he earned and payments he received in 2011 from the sale of Company A calculators.

 (e) BRUNDAGE willfully concealed from his tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

 (f) BRUNDAGE willfully concealed from Intercon's tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

 (g) On or about July 16, 2012, BRUNDAGE caused to be prepared a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for calendar year 2011, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

 (h) On or about January 9, 2015, BRUNDAGE caused to be prepared a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2011, which was submitted to the Internal Revenue Service, that

did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

In violation of Title 26, United States Code, Section 7201.

## COUNT TEN

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.      The allegations contained in paragraphs 1(a) through (g) of Count Seven of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.      From approximately January 1, 2012, and continuing through on or about June 21, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, did willfully attempt to evade and defeat the payment of substantial income tax due and owing by him to the United States of America for the calendar year 2012, and committed the following affirmative acts of evasion:

(a)      During calendar year 2012, BRUNDAGE sought and obtained at least approximately $228,535 from Individual B as proceeds from the sale of Company A calculators.

(b)      BRUNDAGE directed Individual B to remit a portion of BRUNDAGE's share of the proceeds from the sale of Company A calculators to third-party vendors to pay BRUNDAGE's personal expenses, including credit card bills, as well as payments to other individuals and entities to whom/which he owed money.

(c)      During calendar year 2012, BRUNDAGE caused Intercon to pay various personal expenses, including approximately $38,090 in wages and reimbursements to his nanny, approximately $35,920 in wages and reimbursements to his housekeeper, and approximately $35,000 in payments to the Horseshoe Casino

in Hammond, Indiana, and caused these expenditures to be falsely identified as business expenses on the books and records of Intercon, and later caused these expenditures to be deducted as business expenses on Intercon's corporate tax return.

(d)     BRUNDAGE willfully concealed from his tax preparer income he earned and payments he received in 2012 from the sale of Company A calculators.

(e)     BRUNDAGE willfully concealed from his tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(f)     BRUNDAGE willfully concealed from Intercon's tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(g)     On or about June 21, 2013, BRUNDAGE caused to be prepared a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for calendar year 2012, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

In violation of Title 26, United States Code, Section 7201.

## **COUNT ELEVEN**

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1.      The allegations contained in paragraphs 1(a) through (g) of Count Seven of this Indictment are realleged and incorporated as if fully set forth in this Count.

2.      At times material to this Indictment:

(a)      Company 2 was a company based in Southfield, Michigan, that bought and sold industrial, electronic, and other types of equipment.

(b)      Individual C was the owner and operator of Company 2.

(c)      BRUNDAGE regularly sold e-waste and other materials that Intercon had been paid to recycle and/or destroy to Individual C, for further resale through Company 2.

3.      From approximately January 1, 2013, and continuing through on or about September 11, 2014, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRIAN BRUNDAGE,

defendant herein, did willfully attempt to evade and defeat the payment of substantial income tax due and owing by him to the United States of America for the calendar year 2013, and committed the following affirmative acts of evasion:

(a)      During calendar year 2013, BRUNDAGE sought and obtained at least approximately $224,217 from Individual B as proceeds from the sale of Company A calculators.

(b)    BRUNDAGE directed Individual B to remit a portion of BRUNDAGE's share of the proceeds from the sale of Company A calculators to third-party vendors to pay BRUNDAGE's personal expenses, including credit card bills, as well as payments to other individuals and entities to whom/which he owed money.

(c)    During calendar year 2013, BRUNDAGE sought and obtained approximately $45,511 from Individual C as proceeds from the sale of e-waste and other materials to Company 2.

(d)    BRUNDAGE directed Individual C to remit a portion of BRUNDAGE's proceeds from the sale of e-waste and other materials to Company 2 directly to BRUNDAGE, and a portion to a fast food restaurant in which BRUNDAGE had an ownership interest.

(e)    During calendar year 2013, BRUNDAGE caused Intercon to pay various personal expenses, including approximately $39,268 in wages and reimbursements to his nanny, $42,595 in wages and reimbursements to his housekeeper, approximately $68,935 in jewelry purchases, and approximately $30,000 in payments to the Horseshoe Casino in Hammond, Indiana, and caused these expenditures to be falsely identified as business expenses on the books and records of Intercon, and later caused these expenditures to be deducted as business expenses on Intercon's corporate tax return.

(f)    BRUNDAGE willfully concealed from his tax preparer income he earned and payments he received in 2013 from the sale of Company A calculators.

(g)     BRUNDAGE willfully concealed from his tax preparer income he earned and payments he received in 2013 from the sale of e-waste and other materials to Company 2.

(h)     BRUNDAGE willfully concealed from his tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(i)     BRUNDAGE willfully concealed from Intercon's tax preparer the personal expenses he paid from Intercon for his personal benefit and which he caused to be falsely recorded as Intercon business expenses.

(j)     On or about September 11, 2014, BRUNDAGE caused to be prepared a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for calendar year 2013, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon;

In violation of Title 26, United States Code, Section 7201.

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2016 GRAND JURY alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Sections 1341 or 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America:

      a.      any property constituting and derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 982; and

2.      The property to be forfeited includes, but is not limited to:

      a.      a personal money judgment in the amount of $10,000,000.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided by Title 21, United States Code Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY