

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEP 18 2018

JUDGE JOAN H. LEFKOW
UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA

v.

BRIAN BRUNDAGE

No. 16 CR 812

Judge Joan Humphrey Lefkow

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant BRIAN BRUNDAGE, and his attorneys, J. CLIFFORD GREENE and STEVEN SHOBAT, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.      The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1 and 6); mail fraud, in violation of Title 18, United States Code, Section 1341 (Counts 2 – 5), and tax evasion, in violation of Title 26, United States Code, Section 7201 (Counts 7 – 11).

3.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count 1, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; and Count 9, which charges defendant with tax evasion, in violation of Title 26, United States Code, Section 7201.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1 and 9 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

a.      With respect to Count 1 of the indictment:

Beginning no later than 2005 and continuing until at least in or about September 2016, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant BRIAN BRUNDAGE, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

Specifically, beginning in or around 2005, BRUNDAGE became co-owner, president, and chief executive officer of Intercon Solutions Inc. ("Intercon"), an electronic waste ("e-waste") recycling company located in Chicago Heights, Illinois. In or around 2015, BRUNDAGE left Intercon and started EnviroGreen Processing

2

LLC ("EnviroGreen"), an e-waste recycling company located in Gary, Indiana. From 2015 through at least December 2016, Brundage was owner, president, and chief executive officer of EnviroGreen.

BRUNDAGE represented, and caused others, including Intercon and EnviroGreen employees, to falsely represent that Intercon and EnviroGreen disassembled e-waste and other materials to their component parts, and then recycled, destroyed, or sold the component materials. BRUNDAGE further falsely represented, and caused other Intercon employees to falsely represent, that Intercon engaged in "absolutely no reselling, no remarketing, no landfilling, no incineration, and no exportation" of the e-waste and other materials that it received from its customers. BRUNDAGE made, and caused others to make, these false and misleading misrepresentations through Intercon's website at www.interconsolutions.com, EnviroGreen's website at www.envirogreenprocessing.com, various promotional materials, and through telephone calls, emails, faxes, and other mass-marketing means designed to generate business for Intercon and EnviroGreen.

As a result of the representations described above, several private companies, including Companies A, B, C, D, E, F, as well as several governmental entities ("upstream customers"), were induced to enter into contracts or other business agreements with Intercon and EnviroGreen for the disassembly, recycling, and/or destruction of e-waste and other materials. BRUNDAGE knew that it was a material

3

term of these contracts and agreements that Intercon and EnviroGreen disassemble all materials they received from upstream customers in an environmentally sound manner, and that they not landfill or export any of the materials, or resell the materials in whole (*i.e.*, non-disassembled) form.

Rather than disassemble, recycle, and/or destroy all of the materials that upstream customers sent to Intercon and EnviroGreen, BRUNDAGE regularly resold and caused to be resold most of the materials in whole form to various customers ("downstream vendors"). Further, BRUNDAGE knowingly sold substantial amounts of e-waste and other materials, including potentially hazardous Cathode Ray Tube ("CRT")[1] glass and batteries that Intercon had been paid to recycle, to downstream vendors whom BRUNDAGE knew would ship the materials overseas, despite Intercon's representations that it engaged in "absolutely no exporting."

BRUNDAGE also stockpiled and landfilled thousands of tons of e-waste materials—including hazardous waste—that he was unable to resell. For example, for several years prior to 2011, BRUNDAGE caused thousands of CRT monitors and televisions that Intercon was paid to recycle to be stockpiled in a yard adjacent to

---

[1] BRUNDAGE acknowledges CRTs were the glass video display component of certain electronic devices, including certain computer and television monitors, that contained potentially hazardous amounts of lead. If determined to be "hazardous waste" under federal law, CRTs and CRT glass were subject to special restrictions under federal law regarding their export, long-term storage, handling, and disposal.

Intercon's warehouse. In or around 2011, BRUNDAGE directed Intercon employees to clear the yard, which included smashing the e-waste materials with heavy equipment and landfilling the materials. BRUNDAGE acknowledges that, as a result, thousands of tons of e-waste and other material that Intercon was paid to recycle, including potentially hazardous CRT glass, was landfilled.

BRUNDAGE regularly misrepresented, and caused others to misrepresent, to upstream customers how Intercon was handling the e-waste materials it was paid to recycle. Specifically, BRUNDAGE issued and caused to be issued false and fraudulent "Certificates of Destruction" and "Certificates of Recycling" to Intercon's customers, which falsely certified to the customer that its materials had been properly recycled or destroyed, knowing that BRUNDAGE had resold, landfilled, or stockpiled, or was planning to resell, landfill, or stockpile the materials.

As a result of the materially false and fraudulent misrepresentations made by, and caused to be made by, BRUNDAGE, Intercon and EnviroGreen obtained millions of dollars in money and property from their customers, including Companies A, B, C, D, E, and F. The money and property that Intercon, EnviroGreen, and BRUNDAGE obtained based on false and fraudulent pretenses included, but was not limited to, the following:

(1)     Company A paid Intercon at least $220,000 in recycling service fees, and Intercon obtained property from Company A worth at least $3 million, which BRUNDAGE caused to be resold and attempted to resell.

(2)     Company B paid Intercon at least $179,959.65 in recycling service fees, and Intercon obtained property from Company B worth tens of thousands of dollars, which BRUNDAGE resold and attempted to resell.

(3)     Company C paid Intercon at least $59,877 in recycling service fees, and Intercon obtained property from Company C worth tens of thousands of dollars, which BRUNDAGE resold and attempted to resell.

(4)     Company D paid Intercon at least $21,945.04 in recycling service fees.

(5)     Company E paid Intercon at least $56,000 in recycling service fees, and Intercon obtained property from Company E worth at least $30,000, which BRUNDAGE resold and attempted to resell.

(6)     EnviroGreen obtained Property from Company F worth at least approximately $650,000, which BRUNDAGE resold and attempted to resell.

BRUNDAGE admits that the offense involved 10 or more victim companies.

BRUNDAGE converted a substantial portion of the proceeds of the e-waste resales to his personal use, and used the remaining proceeds to operate Intercon, EnviroGreen, and other businesses in which he held an ownership interest.

On or about April 8, 2013, at Chicago Heights, in the Northern District of Illinois, Eastern Division, and elsewhere, BRUNDAGE, for purposes of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, an electronic mail communication from Intercon's email server in Ontario, Canada, to the Microsoft Cloud email server of a downstream vendor located in the United States, in violation of Title 18, United States Code, Section 1343. In the email, BRUNDAGE and Individual B discussed the

sale of Company A calculators that BRUNDAGE had recently shipped to Company 1, and BRUNDAGE directed Individual B to pay certain third parties with BRUNDAGE's share of the proceeds from a previous shipment of Company A calculators that BRUNDAGE had shipped to Company 1.

   b.  With respect to Count 9 of the indictment:

From approximately January 1, 2011, and continuing through on or about January 9, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant BRIAN BRUNDAGE, willfully attempted to evade and defeat the payment of substantial income tax due and owing by him to the United States of America for the calendar year 2011, and committed multiple affirmative acts of evasion.

Between 2005 and 2015, BRUNDAGE was the president, chief executive officer, and part owner of Intercon Solutions, an e-waste recycling business located in Chicago Heights, Illinois. Between 2008 and 2015, BRUNDAGE sold calculators that Intercon was paid to recycle and destroy. Between 2008 and 2015, BRUNDAGE obtained approximately $2.4 million from the sale of these calculators for his personal benefit. In each of these years, BRUNDAGE took affirmative steps to conceal the sales and his use of the proceeds from the company, his accountant, and evade the payment of income tax due and owing by him.

Between 2008 and 2014, for the purpose of evading and defeating the payment of substantial income tax due and owing to the United States of America, BRUNDAGE directed Individual B to remit at least $2.4 million of sales proceeds to

pay BRUNDAGE's personal expenses, including credit card bills, payments on a personal loan, as well as payments to other individuals and entities to whom/which he owed money.

Furthermore, between 2005 and 2015, BRUNDAGE caused Intercon to pay various personal expenses, totaling at least $445,824, including wages and reimbursements to his nanny, wages and reimbursements to his housekeeper, jewelry purchases, and payments to the Horseshoe Casino in Hammond, Indiana. BRUNDAGE caused these expenditures to be falsely identified as business expenses on the books and records of Intercon, and later caused these expenditures to be deducted as business expenses on Intercon's corporate tax return.

BRUNDAGE willfully concealed from his personal tax preparer and Intercon's tax preparer the income he earned from the sale of calculators, as well as the expenses he paid from Intercon for his personal benefit that BRUNDAGE caused to be falsely recorded as Intercon business expenses.

BRUNDAGE knowingly and intentionally caused to be prepared and filed with the Internal Revenue Service false and fraudulent U.S. Individual Income Tax Return, Form 1040s, for calendar years 2008, 2009, 2010, 2011, 2012, 2013, and 2014, that did not include payments BRUNDAGE received from the sale of calculators, or personal expenses BRUNDAGE caused Intercon to pay on his behalf.

(a)     On or about July 16, 2012, BRUNDAGE caused to be prepared a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for calendar

8

year 2011, which was filed with the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon; and

(b)     On or about January 9, 2015, BRUNDAGE caused to be prepared a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2011, which was submitted to the Internal Revenue Service, that did not include payments he received from Individual B, or personal expenses he caused to be paid by Intercon.

BRUNDAGE acknowledges that the total amount of tax loss arising from the offense and relevant conduct for which he is accountable is approximately $743,984.

### Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count 1 carries a maximum sentence of 20 years' imprisonment. Count 1 also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count 1 the judge also may impose a term of supervised release of not more than three years.

b.     Count 9 carries a maximum sentence of 5 years' imprisonment. Count 9 also carries a maximum fine of $100,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500.

Defendant further understands that with respect to Count 9, the judge also may impose a term of supervised release of not more than three years.

c.       Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.       Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.       Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 25 years' imprisonment. In addition, defendant is subject to a total maximum fine of $350,000, or twice the gross gain or gross loss resulting from Count One, whichever is greater, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## **Sentencing Guidelines Calculations**

8.       Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate

deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

b. **Offense Level Calculations**.

*Count 1*:

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. It is the government's position that the total loss amount was at least approximately $3.4 million, which is greater than $1.5 million but not more than $3.5 million. Pursuant to Guideline § 2B1.1(b)(1)(I), this results in an offense level increase of 16. The government's loss amount is based on: (1) the

11

recycling service fees that Intercon's customers paid to Intercon; and (2) the fair market value of the property that Intercon received from Companies A, B, C, D, E, and F under materially false and fraudulent pretenses, which BRUNDAGE sold or attempted to resell. It is the defendant's position that the loss amount in this case is more than $550,000 and not more than $1,500,000, which, pursuant to Guideline § 2B1.1(b)(1)(H), results in an offense level increase of 14 levels. Defendant's loss amount calculation is based on the recycling service fees that Intercon's customers paid to Intercon. Defendant does not dispute the government's figures regarding the value of the property that Intercon obtained from its customers under materially false and fraudulent pretenses, but it is the defendant's position that the property value should not be included in the total loss amount. Both sides are free to present evidence and argument on this point at sentencing.

   iii. Because the offense of conviction involved 10 or more victims and was committed through mass-marketing, pursuant to Guideline § 2B1.1(b)(2)(A) & (B), the offense level is increased by 2 levels.

   iv. It is the government's position that, because the offense involved sophisticated means and the defendant intentionally engaged in and caused the conduct constituting sophisticated means, pursuant to Guideline § 2B1.1(b)(10)(C), the offense level is increased by 2 levels. The defendant does not dispute any of the relevant underlying facts, but believes the facts do not support the

sophisticated means enhancement. Both parties are free to present evidence and argument on this point at sentencing.

    v.  It is the government's position that, because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, pursuant to Guideline § 3B1.1(a), the offense level is increased by 4 levels. It is the defendant's position that he was an organizer, leader, manager, or supervisor of criminal activity other than described in Guideline § 3B1.1(a) or (b), and therefore, pursuant to Guideline § 3B1.1(c), the offense level is increased by 2 levels. Both parties are free to present evidence and argument on this point at sentencing.

  *Count 9*

    vi.  Because the total tax loss amount for which defendant is accountable is approximately $743,984, which is more than $550,000 but not more than $1,500,000, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(H), the base offense level is 20.

    vii.  Because the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity, pursuant to Guideline § 2T1.1(b)(1), the offense level is increased by 2 levels.

    viii.  Because the offense involved sophisticated means, pursuant to Guideline § 2T1.1(b)(2), the offense level is increased by 2 levels.

*Grouping*

ix.     It is the government's position that Count One and Count Nine should not be grouped. The group with the highest offense level is Count One with an offense level of 31. That group is assigned 1 unit pursuant to Guideline § 3D1.4(a). It is the government's position that, because the offense level for Count One (31) is more than five levels higher than the count with the next highest offense level, Count Nine (24), the two groups result in 1.5 units, pursuant to Guideline § 3D1.4(b). This results in a combined offense level of 32, pursuant to Guideline § 3D1.4. It is the defendant's position that Count One and Count Nine should be grouped, pursuant to Guideline § 3D1.2(d), and that the single group offense level is 25. If, however, the Court determines that Count One and Count Nine should not be grouped, it is the defendant's position that, because the offense level for Count One (25) is only one level higher than the offense level for Count Nine (24), the two groups result in 2 units, pursuant to Guideline § 3D1.4(a), for a combined offense level of 27, pursuant to Guideline § 3D1.4.

*Acceptance of Responsibility*

x.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and

14

the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

　　　　　xi.　　In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

　　　　　c.　　**Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

　　　　　d.　　**Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 29, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. It is the defendant's position that, if Counts One and Nine are grouped pursuant to Guideline § 3D1.2(d),

the anticipated offense level is 22, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing range of 41 to 51 months' imprisonment. It is defendant's position that, if Counts One and Nine are not grouped, the anticipated offense level is 24, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing range of 51 to 63 months imprisonment.

        e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

        10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The

parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that the total amount of restitution owed is $1,281,755.69. Restitution includes $220,000 to Company A, $179,959.65 to Company B, $59,877 to Company C, $21,945.04 to Company D, and $56,000 to Company E, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing. Defendant also agrees to pay restitution to the United States Treasury,

17

arising from the criminal and relevant conduct set forth above, totaling $743,974, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. The total amount of restitution to the IRS consists of the following amounts, which should be credited to defendant's Form 1040:

| Tax Year | Amount to be Credited to Tax |
|----------|------------------------------|
| 2008 | $ 181,035 |
| 2009 | $ 38,687 |
| 2010 | $ 75,279 |
| 2011 | $ 177,244 |
| 2012 | $ 64,589 |
| 2013 | $ 59,384 |
| 2014 | $ 147,756 |

14. Defendant understands that the amount of tax loss as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for restitution in the criminal case. Defendant further understands that the IRS may use the restitution order as a basis for civil assessment pursuant to Title 26, United States Code, Section 6201(a)(4).

15. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

18

16.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18.    After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment, as well as the forfeiture allegation as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

#### Nature of Agreement

19.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 16 CR 812.

20.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

19

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

21.    Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse or defendant's partnership or corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

22.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

21

      vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    23.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

    24.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

23

## **Other Terms**

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant and his spouse or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

        a.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and his spouse and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

29.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other

materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.



30.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

31.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

32.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter

prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

33.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

34.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

35.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:  _9/18/18_____

_____        _____
JOHN R. LAUSCH, JR.                                     BRIAN BRUNDAGE
United States Attorney                                       Defendant

_____        _____
SEAN FRANZBLAU                                          J. CLIFFORD GREENE
Assistant U.S. Attorney                                   STEVEN SHOBAT
                                                                         Attorney for Defendant

27